T.C. Summary Opinion 2014-100


UNITED STATES TAX COURT


MARLIN E. POSPISIL AND SHARON R. POSPISIL, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21281-12S.                    Filed October 16, 2014.


Marlin E. Pospisil and Sharon R. Pospisil, pro se.

Charles J. Graves and Douglas S. Polsky, for respondent.


SUMMARY OPINION


PARIS, Judge: This case was heard pursuant to the provisions of section

7463[1] of the Internal Revenue Code in effect when the petition was filed.

---

[1]Unless otherwise indicated, section references are to the Internal Revenue
Code in effect for tax year at issue, and Rule references are to the Tax Court Rules
of Practice and Procedure.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated May 22, 2012, respondent determined a Federal income tax deficiency of $4,928 for petitioners' taxable year 2009. Respondent also determined a section 6662(a) accuracy-related penalty of $985.60. After concessions by the parties,[2] the issues for decision are: (1) whether petitioners are entitled to an additional cost of goods sold of $2,871, (2) whether petitioners are entitled to deduct an additional $7,254 of travel expenses related to Mr. Pospisil's business, and (3) whether petitioners are liable for an accuracy-related penalty under section 6662(a).

## Background

Some of the facts are stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Nebraska when their petition was filed.

Mr. Pospisil has been in the roofing business for 25 years. Historically, Mr. Pospisil's business, operating under the name Northeast Nebraska Energy Savers,

[2]Petitioners conceded respondent's disallowance of $1,859 of claimed deductions for insurance (other than health). Further, in the notice of deficiency respondent disallowed petitioners' claimed total cost of goods sold of $20,926. Respondent has since conceded $18,055 of this amount. See infra pp. 6-7.

had two primary aspects. First, Mr. Pospisil would perform roof maintenance and repair as a subcontractor. This involved finding roofing projects, working with the owners and managers of the buildings in need of repair, submitting bids to the lead contracting companies, and performing the repairs if his bid was accepted. Second, he acted as an independent business owner (IBO) for Conklin Co., Inc. (Conklin), an independent supply company that specializes in roofing and building materials. As an IBO Mr. Pospisil would search for potential clients to purchase products from Conklin. Whenever someone who signed up through Mr. Pospisil purchased a Conklin product, Mr. Pospisil would receive a commission. His business also consisted of following up on warranty claims involving Conklin products, mainly roofing materials, and repairing the products when necessary.

Mr. Pospisil sold Northeast Nebraska Energy Savers to his son in 2008. He and his son carefully went through the company's inventory that year, and the son purchased the inventory he wanted from Mr. Pospisil. Petitioners took this sale of inventory into account on their 2008 tax return. Mr. Pospisil kept the leftover inventory and stored it in a warehouse. On petitioners' 2009 Schedule C, Profit or Loss From Business, the value of the carryover inventory from 2008 is reported as $16,037. Respondent does not dispute this valuation.

As his business was sold in 2008, Mr. Pospisil did not have any employees and did not hire any independent contractors in 2009. However, he was still in business as an IBO for Conklin during that year. In 2009 he continued to search for new clients to make Conklin purchases and kept in contact with those already signed up to encourage them to make additional purchases, thereby increasing his commission. He also continued to inspect and repair Conklin products under warranty. This activity required Mr. Pospisil to purchase additional inventory for his business in 2009, the cost of which was reported as $4,889 on petitioners' Schedule C. Mr. Pospisil sometimes purchased Conklin products for this purpose, but he was free to and in fact did purchase inventory from other vendors as well. At the end of 2009 there was no remaining inventory to be carried over to 2010.

Mr. Pospisil was required to travel across a three-State region to conduct his business successfully. Although he had traveled extensively throughout several States in previous years, in 2009 80% of his travels occurred within 100 miles of his hometown in Nebraska. Petitioners submitted a list of towns and cities in Nebraska, South Dakota, and Iowa that Mr. Pospisil traveled to in 2009, but this list did not contain dates or a specific business purpose. Mr. Pospisil paid dining, lodging, and other attendant expenses while traveling for business. Petitioners also traveled to Florida in 2009 to update the deed on their timeshare, and while

there they went to Disney World. Petitioners traveled exclusively by car, and they did not keep a mileage log. However, Mr. Pospisil had a dedicated vehicle for roofing matters.

Both in his hometown and throughout his travels, Mr. Pospisil would take clients and potential clients out for coffee or to eat. This was a part of Mr. Pospisil's business strategy to encourage clients to purchase Conklin materials. Occasionally he would pick up the tab for a client's children or grandchildren as well if the client had brought them to the meeting. Petitioners' daughter performed some computer work for the business, and Mr. Pospisil would pay for her meals when they had business meetings at restaurants. Petitioners deducted the costs of these meals on their 2009 Schedule C and kept the restaurant receipts, even though most of the meal tickets were for amounts substantially below $25.

Petitioners hired an accountant to prepare their 2009 tax return. Petitioners used the same accountant for 35 years and continued to hire him for return preparation even after his certified public accountant's license had been revoked, as he had continued his bookkeeping business.

Mr. Pospisil would keep track of his income and expenses through a manual bookkeeping system known as the "green binder system" that his accountant set up for him when he first started his roofing business. Essentially, the "green

binder system" involved partitioning monthly expenses and receipts into approximately 25 categories that correlated to allowable Schedule C deductions. Relevantly, two of these categories were inventory purchases and travel expenses. Throughout each month Mr. Pospisil would write down his expenditures in each expense category on a spreadsheet divided into columns, one for each category. At the end of the month he would total the expenses in each category and enter the totals onto a master spreadsheet that showed each category of expenses for each month of the year. This was the table from which petitioners' accountant would prepare their tax returns every year. The accountant would take these amounts at their face value as long as they seemed reasonable. He typically would not review the underlying receipts, invoices, or bank statements when preparing the returns.

Upon completion of their 2009 return petitioners made arrangements to remit the tax payment and sign the return, but they did not otherwise review it. Petitioners' total tax shown on the 2009 tax return was $12,772. Petitioners later adjusted their 2009 tax return to reflect tax of $13,584.

As stated above, respondent has disallowed two items that petitioners claimed on their 2009 Schedule C. First, petitioners included the cost of all of Mr. Pospisil's inventory in cost of goods sold because no inventory remained to carry over to 2010. Their calculated cost of goods sold totaled $20,926, which is the

sum of the $16,037 carryover inventory from 2008 and the $4,889 of inventory petitioners contend was purchased in 2009. Respondent does not dispute $16,037 attributable to the 2008 carryover inventory. Moreover, respondent has allowed petitioners $2,018 for the 2009 inventory on the basis of Conklin invoices in the record. The issue is whether petitioners may include in cost of goods sold the remaining $2,871 of inventory they contend was purchased in 2009.

Petitioners also deducted $14,509 on their Schedule C under the heading "Travel, meals, and entertainment". Petitioners' Schedule C lists the total deduction under "Travel" and does not allocate any of the total deduction to meals or entertainment. Petitioners have submitted hundreds of receipts to substantiate this deduction, most of which are restaurant receipts. Although some of the restaurant receipts are from times when Mr. Pospisil was traveling, most of them are from restaurants in his hometown. The remaining receipts are for gasoline, hotels, office supplies, and entertainment, such as Disney World and zoo tickets. The receipts do not contain information about the business clients Mr. Pospisil was visiting or the business purpose of the purchases. Respondent disallowed half of these expenses, permitting petitioners to deduct $7,255. The remaining $7,254 is in dispute.

## Discussion

The Commissioner's determination of a deficiency is generally presumed correct, and the taxpayer bears the burden of proving it incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deductions claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Under section 7491(a), the burden of proof may shift to the Commissioner if the taxpayer produces credible evidence with respect to any relevant factual issue and meets other requirements. Petitioners have not argued that section 7491(a) applies, and therefore the burden of proof remains on them.

A taxpayer must substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction

relates has been paid or incurred. Sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90.

Under section 162(a) a deduction is allowed for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. The determination of whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact. See Commissioner v. Heininger, 320 U.S. 467, 475 (1943). A deduction normally is not available for personal, living, or family expenses. Sec. 262(a).

When a taxpayer establishes that he paid or incurred a deductible expense but fails to establish the amount of the deduction, the Court normally may estimate the amount allowable as a deduction. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). The record must contain sufficient evidence to permit the Court to conclude that a deductible expense was paid or incurred in at least the amount allowed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Section 274 limits the overall deductibility of entertainment (which includes meals with clients) and travel expenses otherwise allowable under section 162 as "ordinary and necessary" business expenses. Section 274(a)(1) generally disallows deductions for entertainment and recreation but carves out an exception

if the taxpayer establishes that the entertainment was "directly related to" or "associated with" the "active conduct of the taxpayer's trade or business".

Moreover, section 274(d) prescribes stringent substantiation requirements a taxpayer must satisfy before deducting certain categories of expenses, including transportation expenses, meals and entertainment expenditures, and expenses related to the use of listed property as defined in section 280F(d)(4)(A). See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969). To satisfy the requirements of section 274(d), the taxpayer must prove with specificity the amount, time, place, business purpose, and in relation to entertainment expenses, the business relationship of the person(s) entertained. Sec. 1.274-5T(b)(2) and (3), Temporary Income Tax Regs., 50 Fed. Reg. 46014, 46015 (Nov. 6, 1985). An approximation of expenses is insufficient. The taxpayer generally must maintain adequate records or documentary evidence corroborating the taxpayer's own statement which, in combination, is sufficient to establish each element of an expenditure or use. Sec. 1.274-5T(c), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Section 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985), provides in relevant part that "adequate records" generally consist of an account book, a diary, a log, a statement of expense, trip sheets, or a similar

record made at or near the time of the expenditure or use, along with supporting documentary evidence. The Court may not use the rule established in Cohan v. Commissioner, 39 F.2d at 543-544, to estimate expenses covered by section 274(d). Sanford v. Commissioner, 50 T.C. at 827; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Taxpayers lacking a contemporaneous log are generally expected to maintain a record created as near in time as possible to the particular expenditure or business use (including the elements outlined above), supported by corroborative documentary evidence that carries with it a high degree of probative value. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., supra.

Section 274(n) further limits a taxpayer's ability to deduct the total amount of certain expenses--namely, meals and entertainment expenses. Even if a taxpayer has statutory authority to deduct these types of expenses and provides sufficient evidence to meet the substantiation requirements under section 274, only 50% of the total of otherwise deductible food, beverage, and entertainment expenses is allowed as a deduction.

Cost of Goods Sold

Computation of the income of a business reported on Schedule C takes into account both cost of goods sold and other business expenses. The cost of goods

sold during a year is determined by subtracting inventory on hand at the end of the year from the total inventory on hand at the beginning of the year and the cost of purchases. Cost of goods sold is subtracted from gross receipts in determining gross income. Sec. 1.61-3(a), Income Tax Regs. Accordingly, it is not treated as a deduction and is not subject to the limitations on deductions in sections 162 and 274. Metra Chem Corp. v. Commissioner, 88 T.C. 654, 661 (1987). However, any amount claimed as cost of goods sold must be substantiated, and taxpayers are required to maintain records sufficient for this purpose. Sec. 6001; Newman v. Commissioner, T.C. Memo. 2000-345; Wright v. Commissioner, T.C. Memo. 1993-27; sec. 1.6001-1(a), Income Tax Regs.

Petitioners claimed $20,926 for cost of goods sold on their 2009 Schedule C. Of this amount $16,037 was carried over from the 2008 taxable year and was the value of the leftover inventory after petitioners' son purchased the business. The remaining $4,889 is attributable to the inventory that Mr. Pospisil purchased in 2009. Because no inventory remained at the end of 2009, petitioners included the entire cost of the inventory as part of the cost of goods sold.

Respondent has since conceded $18,055 as cost of goods sold for 2009, including the entire amount carried over from 2008 plus $2,018 of the inventory

purchased in 2009 as reflected in the Conklin invoices.[3]  Respondent disputes the remaining $2,871 of cost of goods sold attributable to inventory petitioners contend they purchased in 2009 as not properly substantiated.

As stated above, it is the taxpayer's obligation to make and maintain adequate records sufficient to substantiate a claimed deduction.  Sec. 6001. Petitioners provided bank statements for every month of 2009 showing debit charges to "Shopko Stores", a vendor that sells construction supplies.  These debit charges total $2,055.  Moreover, the record contains receipts for materials from various discount and supply stores that Mr. Pospisil credibly testified were for use in the construction/roofing aspect of his business.  Mr. Pospisil was not limited to purchasing inventory from Conklin.  He was free to use other vendors for construction materials, and he has provided proper documentation showing that he

---

[3]The Conklin invoices in the record totaled $2,162.  However, some of the invoices reflected vitamin purchases, not roofing supply purchases.  Although Mr. Pospisil reported his occupation as "Salesman" on the 2009 Schedule C, there is nothing in the record indicating that he was in the business of selling vitamins. Although cost of goods sold is not subject to restrictions on deductibility under sec. 162(a), petitioners still bore the burden of establishing that the vitamins were in fact inventory and not for personal use.  See Tucker v. Commissioner, T.C. Memo. 1979-449 (stating that the cost of goods sold must be reduced by items withdrawn by the taxpayer for personal use); Calamaras v. Commissioner, T.C. Memo. 1960-201 (same); see also Rule 142(a).  Petitioners have not met this burden.  Therefore, the Court will not disturb respondent's calculation of $2,018 for cost of goods sold relating to the Conklin invoices.

did so.  The total of the relevant invoices, bank statements, and receipts in the record substantiates petitioners' claimed cost of goods sold of $4,889 for inventory purchased in 2009.  Accordingly, petitioners' claimed cost of goods sold for taxable year 2009 is upheld.

Travel, Meals, and Entertainment Expenses

Petitioners deducted $14,509 on their 2009 Schedule C under the heading "Travel, meals, and entertainment".  Schedule C further subcategorizes these expenses into "Travel" and "Deductible meals and entertainment".  Petitioners reported the entire $14,509 under the "Travel" heading.  Respondent disallowed $7,254 of the deduction.

To substantiate their "Travel, meals, and entertainment" expenses,[4] petitioners have inundated the Court with literally hundreds of receipts.  Most of these receipts are for restaurants, both in Nebraska and in other States, including Florida.  Petitioners have provided very few receipts or invoices for lodging.  Some of the receipts are for entertainment expenses, such as Disney World and zoo tickets.  There are also handwritten notations for certain expenses

---

[4]Although petitioners did not separate their travel, meals, and entertainment expenses on their Schedule C, instead listing them all under "Travel", most of the receipts are from eating establishments in petitioners' hometown.  The Court, therefore, assumes that the amount petitioners listed as "Travel" deductions included expenses for meals and entertainment in their hometown.

that include the amount and general category of the expense. Petitioners have also provided pages and pages of invoices for items not at issue, including auto expenses and utilities.

Despite petitioners' impressive collection of receipts reflecting totals substantially similar to the amounts claimed, very little of that documentation helps them here. Respondent has already allowed petitioners to deduct the claimed expenses in this category subject to the 50% limitation. Even if petitioners did properly substantiate these deductions under section 274, the deductions would be limited to 50% of actual expenses for meals and entertainment. See sec. 274(n). Petitioners do not assert, and there is no evidence on their return or otherwise, that they claimed only 50% of their meals and entertainment expenses on their Schedule C. Therefore, respondent has already permitted petitioners to deduct the statutory maximum for meals and entertainment. This includes meals that Mr. Pospisil ate while traveling for business as well as meals with clients in his hometown, which are considered entertainment expenses. This also encompasses the other entertainment expenses.[5]

---

[5]Because respondent has already allowed petitioners the statutory maximum deduction for meals and entertainment, the Court need not determine whether these expenses were properly substantiated under sec. 274(d).

The only remaining documentation relevant to this category is a few bank statements showing hotel or motel charges.[6] Although not subject to the 50% limitation on meals and entertainment expenses in section 274(n), deductions for lodging during business travel are still subject to the substantiation requirements of section 274(d). Therefore, the Court may not approximate these expenses but must have evidence corroborating the amount, time, place, and business purpose of the expenses. Despite the ream of receipts in the record and the amount of traveling Mr. Pospisil purportedly did in 2009, the record contains documentation for only four hotel or motel stays. All of these charges appear to be either in or en route to (or from) Florida.[7] Petitioners visited Florida primarily for personal reasons--to update the deed on their timeshare.[8] Although Mr. Pospisil was

---

[6]The receipts relating to gas and auto expenses are not relevant because respondent did not challenge petitioners' claimed $3,650 deduction for "Vehicle Expense" on their Schedule C. Taxpayers who use a car in furtherance of their business have the option of deducting a "standard mileage rate" or actual vehicle expenses, but not both. See sec. 1.274-5(j)(2), Income Tax Regs.; Rev. Proc. 2008-72, sec. 5.03, 2008-2 C.B. (Vol. 2) 1286, 1288. Petitioners chose to deduct actual vehicle expenses.

[7]The hotels are in Florida, Mississippi, and Missouri. The record indicates that Mr. Pospisil traveled for business in 2009 only to towns in Nebraska, South Dakota, and Iowa.

[8]At trial Mr. Pospisil testified that petitioners traveled to Florida for an industry convention. They later corrected this statement. They were actually in

(continued...)

always on the lookout for new clients to purchase Conklin products and might therefore be considered, in a way, to have been always working, this vague contention is insufficient to justify deducting hotel expenses for the Florida trip. Petitioners could not provide the Court with a specific business purpose or names of clients or potential clients that Mr. Pospisil spoke with in Florida. Therefore, petitioners are not entitled to a deduction beyond what respondent has already allowed them pursuant to the notice of deficiency with respect to travel, meals, and entertainment expenses.

Section 6662(a) Accuracy-Related Penalty

Respondent also determined an accuracy-related penalty under section 6662(a). Section 7491(c) provides that the Commissioner bears the burden of production with respect to the liability of any individual for additions to tax and penalties. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). However, the burden to establish that they acted with reasonable cause remains with the taxpayers. Id. at 446-447.

---

[8](...continued)
Florida that year to update the deed on their timeshare. Because the timeshare plays no part in Mr. Pospisil's business, the travel expenses related to it are not deductible as business expenses. See sec. 162(a)(2). Further, petitioners have not demonstrated that the timeshare is property held for investment and that expenses related to its upkeep are deductible under sec. 212.

Respondent contends that petitioners are liable for the penalty because of negligence and/or disregard of rules or regulations or, alternatively, because their underpayment is due to a substantial understatement of income tax. See sec. 6662(b)(1) and (2). For purposes of the penalty, "'negligence' includes any failure to make a reasonable attempt to comply with the provisions of this title". Sec. 6662(c). Under caselaw, "'[n]egligence is a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), aff'g on this issue 43 T.C. 168 (1964) and T.C. Memo. 1964-299), aff'd, 904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991). Section 6662(a) and (b)(2) imposes an accuracy-related penalty on any underpayment attributable to any substantial understatement of income tax. An understatement is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A).

A taxpayer will not be liable for the section 6662(a) penalty if the taxpayer proves that he (1) had reasonable cause for the underpayment and (2) acted in good faith with respect to the underpayment. Sec. 6664(c)(1). The determination of reasonable cause and good faith "is made on a case-by-case basis, taking into

account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax Regs.

If a taxpayer can show that he reasonably relied on a tax professional, then he may avoid a section 6662(a) penalty. See sec. 1.6664-4(c), Income Tax Regs. A taxpayer must demonstrate that "(1) [t]he adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment." Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Respondent has not shown that petitioners acted negligently with respect to their 2009 tax return. By maintaining records and keeping copious receipts, petitioners made a reasonable attempt to comply with the law. However, petitioners will be liable for a substantial understatement penalty if, upon a Rule 155 computation, their understatement of income tax exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A). To the extent that those computations establish that petitioners have a substantial understatement of income tax, respondent will have met his burden of production. See Prince v. Commissioner, T.C. Memo. 2003-247.

Petitioners have not provided sufficient evidence to show that they acted reasonably or with good faith in regard to their reporting of their meals and entertainment expenses. By not limiting their meals and entertainment expenses to 50% of their actual expenses as required under section 274(n), petitioners did not heed the clear text of the statute. Petitioners mislabeled many of their meals expenses by not dividing out their meals for their accountant. Petitioners may not rely on their tax professional to avoid a penalty that may be calculated on this adjustment. They did not provide their accountant with the underlying records but rather handed him the summaries with their own calculations. The accountant took these numbers at face value and merely entered them on the return. Because the accountant knew that Mr. Pospisil had traveled to several States, he did not question the expenses in the "Travel" category. Moreover, petitioners did not review the tax return once their accountant had prepared it. If petitioners had provided their accountant with a packet of meal receipts, a quick glance by the accountant would have resolved the missing meals expense category on their Schedule C. Accordingly, the accuracy-related penalty is sustained insofar as the Rule 155 computations show a substantial understatement of income tax.

The Court has considered all of petitioners' contentions, argument, requests, and statements. To the extent not discussed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.